**Donald A. LOCK, et al., Plaintiffs,**

v.

**Leo D. JENKINS, et al., Defendants.**

**No. S 75–141.**

United States District Court,
N.D. Indiana,
South Bend Division.

March 14, 1986.

---

Seymour · Moskowitz, Valparaiso, Ind., for plaintiffs.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

ALLEN SHARP, Chief Judge.

## MEMORANDUM AND ORDER

On August 29, 1985, this court entered a Memorandum and Order requiring plaintiffs to file any final petitions for costs under 28 U.S.C. § 1920 and any final petition for attorney fees under 42 U.S.C. § 1988 by October 7, 1985 and gave defendants until November 4, 1985 to respond thereto. On October 7, 1985, the plaintiffs filed their Second Amended Motion for Attorneys Fees and on October 9, 1985 the plaintiffs filed their Amended Bill of Costs on the standard from Bill of Costs available at the office of the clerk of this court. The defendants have filed a memorandum in opposition to the request for fees and costs and the plaintiffs have filed a reply thereto. The court will address the issues of costs and attorney fees separately.

### 1. *Bill of Costs*

Plaintiffs' original Bill of Costs requested reimbursement for the following items in the following amounts:

Fees for Witnesses:

| | |
|---|---|
| Anthony Kuharich | $ 507.17 |
| 4 days at $120/day=$480 | |
| 209 miles at $.13/mile=$27.17 | |
| Costs incident to taking depositions | $ 870.55 |
| Copying | $ 350.00 |
| (modest estimate at $.05/page) | |
| Mileage | $ 135.20 |
| (modest estimate at $.13/mile) | |
| Phone expense | $ 40.00 |
| (modest estimate) | |
| TOTAL | $ 1902.92 |

Plaintiffs' Amended Bill of Costs requested reimbursement for the following items in the following amounts:

| | |
|---|---|
| Fees for Witnesses (same as above) | $ 507.07 |
| Costs incident to taking depositions | $ 870.55 |
| Copying (modest estimate at $.10/page) | $ 884.70 |
| Mileage 1040 miles at $.13/mile=$135.20 1330 miles at $.20/mile=$266.00 | $ 401.20 |
| Phone Expenses (modest estimate) | $ 70.00 |
| TOTAL | $2,733.62 |

Neither a brief nor documentation for the requested costs, as required by this court, were submitted or filed with the original Bill of Costs filed on August 18, 1981 nor the Amended Bill of Costs filed October 9, 1985. Further, this court notes that the Amended Bill of Costs was not timely filed as required by this court's order of August 29, 1985. However, since the plaintiffs had filed an original Bill of Costs and the items on each were the same except for amount, this court will address the merits of plaintiffs' entitlement to costs in this case.

Rule 54(d) of the Federal Rules of Civil Procedure provides in pertinent part that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . . ." An award of costs is entrusted to the sound discretion of the district court but that discretion is not without bounds. *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237 (7th Cir.1985). Specifically, the "discretion given district judges to tax costs should be sparingly exercised *with references to expenses not specifically allowed by statute." Id.* at 1242 citing *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964) (emphasis added). The statutory basis for an award of costs in this case is the general costs statute, 28 U.S.C. § 1920 which provides:

§ 1920 Taxation of Costs

A judge or clerk of any court of the United States may tax as costs the following;

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The first item of costs requested by plaintiffs is expert witness fees in the total sum of $507.17 for Anthony S. Kuharich. That figure includes the sum of $480.00 in professional fees (4 days at $120.00/day) plus $27.17 in mileage expense (209 miles at $.13/mile). The record in this case reflects that a notice of deposition with respect to Anthony S. Kuharich was filed on October 25, 1978 but there is no record that his deposition was ever filed with the court. Further, the record reveals that Anthony S. Kuharich testified only one day at trial, on October 31, 1978.

Witness fees in general are covered by the provisions of 28 U.S.C. § 1821 which provides in pertinent part as follows:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

(b) A witness shall be paid an attendance fee of $30.00 per day for each day's attendance.

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably

utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

■ The law in this circuit is clear with respect to the compensation for expert witnesses—the prevailing party can recover only the statutory amount prescribed in § 1821 and not any additional expert fees. *State of Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 865 (7th Cir.1981); *McHenry v. Joseph T. Ryerson Co.*, 104 F.R.D. 478, 480 (N.D.Ind.1985); *Independence Tube Corp. v. Copperweld Corp.*, 543 F.Supp. 706, 721 (N.D.Ill.1982). Therefore, the correct standard for taxing fees for expert witnesses is not the amount the expert charged the plaintiff, nor is the time spent by an expert consulting with attorneys or preparing to testify a taxable cost. *McHenry*, 104 F.R.D. at 480–81; *Independence Tube Corp.*, 543 F.Supp. at 721. Thus, in accord with the above-cited authority, defendants will be taxed the statutory amounts for Anthony S. Kuharich for the day he testified at trial, being the sum of thirty dollars ($30.00). No fees will be awarded for the other three days claimed by plaintiffs since there is no evidence in this record documenting that Mr. Kuharich was engaging in activities covered by § 1821 on those days. Further the plaintiffs' request for $27.17 in mileage expenses claimed for Anthony S. Kuharich will be denied because they failed to provide the documentation to support such claim as required by this court.

The next cost that plaintiffs requested be taxed against the defendants is the sum of $870.55 under the heading "Costs incident to taking depositions." Subpart (2) of 28 U.S.C. § 1920 permits taxation of costs for the fees of a court reporter who prepares a "stenographic transcript necessarily obtained for use in the case." The determination of whether a particular deposition or transcript was "necessarily obtained" is a factual one. *George R. Hall, Inc. v. Superior Trucking Co.*, 532 F.Supp. 985, 994 (N.D.Ga.1982). A transcript will be found to be "necessarily obtained" if "it was necessary to counsel's effective performance and proper handling of the case." *Marcoin, Inc. v. Edwin K. Williams Co.*, 88 F.R.D. 588, 590 (E.D.Va.1980). The most direct evidence of this "necessity" is the actual use of the transcript by counsel or by the court; however, it is clearly established in this circuit that the costs of a deposition may be taxed even if the witness was not called at trial or the deposition was not used at trial or even if the deposition was for discovery purposes only. *SCA Services, Inc. v. Lucky Stores*, 599 F.2d 178, 180 (7th Cir.1979).

■ All of plaintiffs' request for reimbursement for "Costs incident to taking depositions" must be disallowed in this case for two reasons. First, the plaintiffs have failed to identify whose depositions are included in the request and therefore the court is unable to determine whether such depositions were "necessarily obtained" for use in the case. Second, the plaintiffs have failed to provide the court with any documentation with respect to this item as required by the court.

■ Plaintiffs next seek reimbursement for "Copying." In their original Bill of Costs, plaintiffs sought three hundred fifty dollars ($350.00) for copying costs at five cents per page ($.05/page) or approximately 7000 pages. In their Amended Bill of Costs, plaintiffs seek reimbursement for 8847 copies at ten cent per page ($.10/page) or a total of $884.70. Both requests are characterized by plaintiffs as "modest estimates." This item is apparently for photocopying or reproduction services. Although the statute does not expressly include photocopying, such expenses are similar to "fees and disbursements for printing" and as such have been allowed in cases, *see, Dowdell v. City of Apopka, Florida*, 521 F.Supp. 297, 305 & n. 7 (M.D. Fla.1981), if the reproductions are offered into evidence or are otherwise necessarily

obtained for use in the case. *Wolfe v. Wolfe*, 570 F.Supp. 826, 828 (D.S.C.1983). However, courts have differed in their assessment of what is "necessarily obtained for use in the case." *Cf. Waters v. Heublein, Inc.*, 485 F.Supp. 110, 117 (N.D.Cal. 1979) (ordinary office xeroxing allowed as fees for paper necessarily obtained for use in the case) *with Kaimowitz v. Howard*, 547 F.Supp. 1345 (E.D.Mich.1982) (ordinary office copies not available as costs). In this case, the entire request for "copying" must be denied however, since the plaintiffs have failed to submit any receipts, documentation or even any description of what the copying expenses covered. Absent such documentation, these costs must be disallowed.

■ The next item on plaintiffs' Bill of Costs is "mileage." On their original Bill of Costs, the plaintiffs sought $135.20 as mileage costs, noting that such was a "modest estimate at $.13 a mile." On their Amended Bill of Costs, plaintiffs sought the same $135.20 plus an additional $266.00 for 1330 miles at $.20 a mile. Apparently these "mileage costs" are attorney travel expenses although no documentation to that effect is contained in the record. If such "expenses" are for attorney travel expenses, they are not among the items enumerated in 28 U.S.C. § 1920 and are thus disallowed. It is well established in this circuit that an attorney's traveling expenses incurred in attending depositions, pretrial conferences and trial are not recoverable as costs. *Commissioners of Highways of the Towns of Annawan, et al. v. United States*, 653 F.2d 292, 298 (7th Cir. 1981); *Wahl v. Carrier Mfg. Co., Inc.*, 511 F.2d 209, 217 (7th Cir.1975); *Kiefel v. Las Vagas Hacienda, Inc.*, 404 F.2d 1163, 1170 (7th Cir.1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221, *reh. denied*, 395 U.S. 987, 89 S.Ct. 2128, 23 L.Ed.2d 776 (1969). If such "mileage" was for some other purpose, such request is denied because the plaintiffs' failed to provide the court with any documentation or authority showing that they are entitled to recover such expense as a "cost" under 28 U.S.C. § 1920.

■ The last expense requested by plaintiffs to be taxed as costs is labeled "Phone expense." In the original Bill of Costs, plaintiffs sought the sum of $40.00 under this heading and in their Amended Bill of Costs, plaintiffs sought the sum of $70.00. In both requests, the plaintiffs indicated that said sum was a "modest estimate." Although the figures may indeed be "modest estimates," such expenses are not recoverable costs pursuant to 28 U.S.C. § 1920 and are therefore disallowed.

For the foregoing reasons, the following items are taxed as costs under 28 U.S.C. § 1920:

| Expert Witness Fees | |
|---|---|
| Anthony S. Kuharich | $30.00 |
| TOTAL | $30.00 |

Further, to the extent that the Clerk of this Court has assessed costs against defendants that are inconsistent with this opinion, such assessments are hereby set aside.

### 2. *Attorneys Fees*

The plaintiffs in this case are seeking an award of attorneys fees pursuant to 42 U.S.C. § 1988. Plaintiffs' Second Amended Motion for Attorney Fees filed October 7, 1985 requests an award of attorney fees as follows:

| Attorney | Charge/hour | Hours | Total Charge |
|---|---|---|---|
| Ivan Bodensteiner | $95.00 | 6.0 | $ 570.00 |
| Myrna Hart | $85.00 | 804.3 | 68,365.50 |
| Dean L. Sutton | $85.00 | 4.5 | 382.50 |
| Donald J. Evans | $85.00 | 7.0 | 595.00 |
| | | 821.8 | $69,913.00 |

The plaintiffs' original motion for attorney fees, filed August 18, 1981 requested an award of attorney fees as follows:

| Attorney | Charge/hour | Hours | Total Charge |
|---|---|---|---|
| Ivan Bodensteiner | $75.00 | 6.0 | $ 450.00 |
| Myrna Hart | $60.00 | 708.3 | 42,498.00 |
| Dean L. Sutton | $60.00 | 4.5 | 270.00 |
| Donald J. Evans | $60.00 | 7.0 | 420.00 |
| | | 725.8 | $43,638.00 |

Both motions were accompanied by supporting affidavits. The defendants have objected to the amount of plaintiff' requests for fees. For the following reasons, plaintiffs will be awarded attorney fees

pursuant to 42 U.S.C. § 1988 in the sum of $16,808.75.

Section 1988 of Title 42, United States Code gives a court broad authority to award reasonable attorneys fees to a prevailing party in a federal civil rights action. *See, e.g., Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Hibma v. Odegaard,* 769 F.2d 1147, 1157 (7th Cir.1985). Plaintiffs will be considered "prevailing parties" for attorneys fees purposes under § 1988 "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), *citing Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978). Once a plaintiff has been determined to be a "prevailing party," the court must then determine what fee is "reasonable." In the case before the court, the record discloses that the plaintiffs are prevailing parties within the meaning of 42 U.S.C. § 1988. Accordingly, this court must determine what attorneys fees award is reasonable, a decision entrusted to its sound discretion. *Berberena v. Coler,* 753 F.2d 629, 632 (7th Cir.1985).

The starting point for determining the amount of a reasonable attorneys fee is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley, supra,* 461 U.S. at 433, 103 S.Ct. at 1939. In determining the number of hours to be compensated for the purposes of this initial calculation, the court may exclude hours that were not "reasonably expended" and may also reduce the number of hours if documentation of counsels' hours are not adequately documented. *Id.* The record in this case reveals that Myrna Hart was the lead plaintiffs' counsel in this case and that the other three (3) attorneys requesting an award of fees had a very limited involvement. This court will first discuss the requests of the three attorneys with a limited involvement in this case.

 The affidavit of Dean L. Sutton discloses that he spent a total of four and one-half (4½) hours in this case, all in meetings with co-counsel. Which co-counsel were involved in those meetings and the subjects discussed at those meetings were not disclosed in his affidavit. His affidavit further discloses that he was admitted to practice in Indiana in 1975, that all services rendered by him occurred in late 1975 and 1976, and that his services in this case were rendered under the auspices of Project Justice and Equality, Inc. The lack of adequate documentation with respect to Mr. Sutton's hours leads this court to find that these hours are redundant or otherwise unnecessary. As a recent admittee to the bar, there is no basis for an argument that he possessed special skills or experience lacked by other counsel in this case. Accordingly, the court concludes that the services rendered by Mr. Dean L. Sutton were the result of overstaffing and will be and hereby are excluded from the initial fee calculation hours.

The affidavit of Donald J. Evans discloses that he spent a total of seven (7) hours on this case, all assisting with the appellate brief in June 1979. Exactly what Mr. Evans did with respect to the appellate brief, i.e., research, writing, reviewing or editing is not disclosed in the affidavit. His affidavit further discloses that he was admitted to the bar in 1974 and had handled approximately ten (10) civil rights cases since being admitted. His affidavit does not disclose what experience he had with respect to appellate briefs at the time he rendered his assistance with the appellate brief in this case. Thus, there is no basis for determining that he had any special skill or experience with respect thereto. Further, his total lack of participation in the case at the trial level certainly does not provide him with some special insight into the issues on appeal. The lack of adequate documentation with respect to Mr. Evans' hours leads this court to find that these hours are redundant or otherwise unnecessary and are a result of overstaffing. Accordingly, Mr. Evans' hours will be and hereby are excluded from the initial fee calculation hours.

■ The affidavit of Ivan E. Bodensteiner discloses that he spent a total of six (6) hours on this case and that all of those hours with the exception of .8 hours was spent reviewing pleadings or discussing matters with Myrna Hart, the lead counsel in this case. One-half (½) hour was spent discussing state court proceedings with Myrna Hart. The relevance of such a discussion to the merits of this case does not appear from the record and that time will be excluded. Further, the time spent merely reviewing pleadings in this case by Mr. Bodensteiner is not properly billed to the defendants in this case because it can only be attributable to overstaffing. Mr. Bodensteiner did not play an active part in this litigation and his statement of time spent does not reveal that he made any contribution with respect to the pleadings he merely reviewed. In the exercise of "billing judgment" Mr. Bodensteiner should not have included such time in billing a client so that time is not properly billed to the defendants in this case. This court concludes that another two (2) hours should be excluded. Accordingly, three and one-half (3½) hours of Mr. Bodensteiner's time is properly included in calculating the initial fee hours and the other two and one-half (2½) hours will be excluded.

■ The determination of the number of hours reasonably expended on this litigation by Myrna Hart is more difficult because of the mere number of hours claimed by her, a total of 804.3 hours. This court has carefully reviewed the affidavits submitted by Myrna Hart outlining the hours she spent on this litigation. This court finds that some of the documentation is inadequate and that Myrna Hart has included in her fee request numerous hours that are not properly chargeable to these defendants. First, there are numerous entries that merely say correspondence, phone calls, miscellaneous, or "etc." This court finds that such documentation is inadequate and those hours must be deleted from the initial calculation of fee hours. Second, the record reveals that a considerable amount of time was spent on a motion and brief for a temporary restraining order that was never granted and a motion and brief to intervene that was withdrawn. These hours must be excluded because they were not "reasonably expended" in this case. Third, the affidavit of Myrna Hart filed August 18, 1981 together with her Declaration filed on February 24, 1986 attached to plaintiffs' Reply to Defendants' Memorandum Concerning Attorney Fees reveals that 7.9 hours spent on May 2, 1977 and May 4, 1977 were not related to the matters in this case but rather a state court case involving Donald A. Lock. Myrna Hart's affidavit of August 18, 1981 also contains reference to a "motion for safekeeping" and a motion to transfer plaintiff, apparently Donald A. Lock, from prison to jail in May 1978. No such motions were ever filed in this case. Further, based on Myrna Hart's statements in her Declaration with respect to the state court matters in May 1977, it would appear that the May 1978 matter involved the same or similar issues. These hours may not properly be billed to these defendants. Further, the docket in this case reveals that plaintiffs filed a request for production of documents in this case on January 3, 1977. The next entry on the docket is August 10, 1977 setting this case for an evidentiary hearing. On August 22, 1977, the plaintiffs filed a motion for continuance which was granted on August 29, 1977. The next entry on the docket is January 3, 1978 which is an order denying a motion to dismiss that had been filed earlier by the defendants. On March 16, 1978, the court entered an order requiring the parties to file briefs no later than June 1, 1978 relating to *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The plaintiffs filed their brief on June 1, 1978. Other than the three filings by plaintiffs described above, the activities described by plaintiffs' counsel, Myrna Hart, during this period of time must be attributed to the state court matters and not to this case without adequate documentation relating such activities to this case. None of the filing by plaintiff required the assistance of plaintiff although the attorney affidavit indicated a

substantial amount of time spent in correspondence and phone calls with plaintiff. Without providing adequate documentation with respect to the subject matter of said correspondence and phone calls, this court concludes that, based on the surrounding circumstances, it must have related to the state court matters and not this case. Accordingly, that time must also be excluded from the initial fee calculation hours. Fourth, there are five entries from March 1, 1976 through March 8, 1976 entitled "research". The subject matter of that research was not identified. This court cannot determine from the surrounding entries exactly what such research was related to. Accordingly, those hours will be excluded. Finally, there are numerous entries entitled meetings or conferences with students or interns. In her Declaration attached to the February 25, 1986 filing by plaintiffs, Myrna Hart states that the time she spent conferring with law students involved only activities necessary to the prosecution of the case and examples of what was discussed was "case strategy, the fruits of research, etc." Her affidavit indicates that she was supervising these students under the Federal Courts Clinical Program of the University of Valparaiso School of Law. She maintains that a conservative estimate of the number of hours spent by the students in this litigation was 400 hours. In light of the number of hours being claimed by Myrna Hart in this litigation, both with respect to research and drafting pleadings and memorandums, this court can only conclude that the time spent by the students was in substantial part, if not completely, redundant or otherwise unnecessary with

respect to the proper handling of this case. Although it may have provided good experience and education for the students, the hours spent by them cannot be charged to the defendants and this court finds that the hours claimed by Myrna Hart in meetings or discussions with the students should also be excluded.

With this background in mind, this court will now turn to a discussion of the number of hours properly included in the initial fee calculation hours by Myrna Hart. This court notes that some of the entries in Ms. Hart's affidavits include reference to multiple activities but do not contain a breakdown of time spent with respect to each activity included in the entry. If under the above analysis, some of the time spent on those activities is excludable and some is not, this court should probably exclude the entire amount claimed. *See, Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941. However, in the interest of justice, this court will attempt to apportion the time in a fair manner based on the record as a whole. Further, there may be specific instances when certain hours are excluded from the initial calculation that do not fall within one of the above described categories. In such instances, this court will attempt to give its reasoning for deleting such hours as appropriate.

The affidavit filed by Myrna Hart in August 1981 outlining the time spent on this case up to August 5, 1981 reveals that she catalogued 708.3 hours. After carefully reviewing all the entries on that affidavit, this court finds that 72.1 hours of that time must be excluded outright.[1] This court

1. The following time was excluded outright from Myrna Hart's request filed August 18, 1981:

| Date | Activity | Time |
| --- | --- | --- |
| 10/13/75 | Meeting with students; correspondence | 1.0 |
| 10/16/75 | Meeting with students; correspondence | .5 |
| 10/24/75 | Correspondence; phone calls | 1.0 |
| 11/10/75 | Meeting with students; correspondence | .5 |
| 11/14/75 | Meeting with students; correspondence | .5 |
| 11/17/75 | Research for TRO; meeting with students | 3.5 |
| 11/20/75 | Reviewing students' work | 1.0 |
| 12/10/75 | Memo in support of motion for TRO | 2.0 |
| 12/18/75 | Research; memo in support of motion for TRO; exhibits | 3.5 |
| 12/19/75 | Memo in support of motion for TRO; miscellaneous | 3.0 |

| Date | Activity | Time |
| --- | --- | --- |
| 12/22/75 | Memo in support of motion for TRO; miscellaneous preparation for filing complaint, motions, memos | 4.5 |
| 1/5/76 | Miscellaneous | 4.5 |
| 1/16/76 | Meeting with students | .5 |
| 1/28/76 | Meeting with students | .3 |
| 2/4/76 | Meeting with students | 1.0 |
| 2/12/76 | Correspondence; conference with students | 1.0 |
| 2/19/76 | Phone calls; conferences | 1.0 |
| 3/1/76 | Research | 2.0 |
| 3/3/76 | Research; conference with students | 3.0 |
| 3/4/76 | Research | 3.0 |
| 3/5/76 | Research | 1.0 |
| 3/8/76 | Research | 1.0 |
| 3/17/76 | Correspondence; phone calls; etc. | 1.0 |
| 3/30/76 | Motion to intervene, etc. | 1.0 |

further finds that another 37.2 hours must be excluded in apportioned time.[2] Accordingly, this court finds that the number of hours properly chargeable by Myrna Hart

| Date | Activity | Time |
|---|---|---|
| 4/5/76 | Memo in support of motion to intervene | 2.5 |
| 4/7/76 | Memo in support of motion to intervene | 3.0 |
| 4/8/76 | Memo in support of motion to intervene | 2.0 |
| 4/29/76 | Phone call re: potential intervenor | .5 |
| 6/21/76 | Meeting with students | .3 |
| 3/24/77 | Phone call to Nile Stanton re: plaintiff | .3 |
| 4/12/77 | Interview with plaintiff and potential plaintiff | 2.0 |
| 4/14/77 | Call on behalf of plaintiff | .2 |
| 4/21/77 | Correspondence with plaintiff | .3 |
| 4/22/77 | Phone conversations with defendants' counsel and plaintiff | .4 |
| 4/25/77 | Correspondence with plaintiffs and physician; call from plaintiff | .6 |
| 4/27/77 | Correspondence; call to defendants' counsel | .3 |
| 4/29/77 | Interview with plaintiff; phone conversation with Assistant and Deputy Attorney General | 2.2 |
| 5/2/77 | Preparation for hearing; calls from deputy attorney general; correspondence with plaintiff | 2.3 |
| 5/4/77 | Calls to and from plaintiff; co-counsel and assistant attorney general; preparation for hearing | 5.6 |
| 5/9/77 | Correspondence | .1 |
| 6/3/77 | Correspondence with plaintiff | .1 |
| 6/6/77 | Phone call from plaintiff | .1 |
| 6/24/77 | Phone call from plaintiff | .2 |
| 8/2/77 | Phone call from plaintiff | .3 |
| 8/15/77 | Correspondence to plaintiff and plaintiff's physician | .3 |
| 8/30/77 | Call from defendants' attorney and from plaintiff; correspondence | .3 |
| 10/10/77 | Call from plaintiff | .2 |
| 10/20/77 | Call from plaintiff | .4 |
| 10/26/77 | Call from defendants' attorney | .1 |
| 11/16/77 | Correspondence from plaintiff | .1 |
| 12/5/77 | Correspondence to deputy attorney general | .1 |
| 12/8/77 | Correspondence from plaintiff | .1 |
| 12/15/77 | Call to deputy attorney general | .1 |
| 12/30/77 | Correspondence from plaintiff | .1 |
| 1/16/78 | Correspondence to plaintiff | .2 |
| 1/23/78 | Correspondence with plaintiff and from plaintiff | .2 |
| 3/1/78 | Correspondence from plaintiff | .2 |
| 4/13/78 | Correspondence from and to plaintiff and deputy attorney general; research | 1.2 |
| 4/21/78 | Interviews with plaintiff and defendant Duckworth | .6 |
| 4/25/78 | Phone calls; correspondence | .6 |
| 5/3/78 | Interview with plaintiff; phone call; correspondence | 1.8 |
| 5/8/78 | Call from plaintiff's wife and re: plaintiff's transfer, motion re: transfer | .5 |
| 6/8/78 | Correspondence to and from plaintiff | .2 |
| 7/11/78 | Call from plaintiff | .2 |
| 7/24/78 | Correspondence from plaintiff | .1 |
| 8/1/78 | Correspondence to and from plaintiff and to Department of Correction | .4 |
| 8/14/78 | Correspondence to plaintiff | .1 |
| 8/21/78 | Correspondence from plaintiff and to deputy attorney general | .2 |
| 9/13/78 | Call from deputy attorney general | .1 |
| 9/14/78 | Conference with student; letter to plaintiff | .3 |
| 9/18/78 | Conference with student | .3 |
| 9/22/78 | Conference with students; call to plaintiff | .9 |
| 9/29/78 | Conference with students | .1 |
| 10/2/78 | Conference with students | .8 |
| 11/3/78 | Conference with student | .2 |
| 1/11/79 | Conference with student | .1 |
| 1/16/79 | Conference with student re: appeal | .2 |
| 4/24/79 | Conference with student re: appellate brief | .2 |

**2.** The following time was apportioned as follows from Myrna Hart's request filed August 18, 1981:

| Date | Activity | Included | Excluded |
|---|---|---|---|
| 12/1/75 | Complaint; calls; correspondence; conferences with students | .5 | 1.0 |
| 12/2/75 | Complaint; Motion for TRO | 1.0 | 1.0 |
| 12/3/75 | Complaint; memo in support of motion for TRO; motion to amend complaint; conferences with students; calls; memo in support of motion to determine class | 4.0 | 4.0 |
| 12/4/75 | Complaint; conference with student; memo in support of motion for TRO | 1.5 | 4.0 |
| 12/8/75 | Memo in support of motion for TRO; interviewing plaintiff | 3.5 | 3.0 |
| 12/16/75 | Revisions to complaint, etc. | 1.0 | 1.0 |
| 12/17/75 | Complaint; memo in support of motion for TRO | 1.5 | 1.5 |
| 1/26/76 | Meeting with students; discovery | .4 | .4 |
| 1/29/76 | Reviewing motion to dismiss; meeting with students | 1.0 | .5 |
| 4/2/76 | Motion to depose by tape; memo; phone calls | .5 | .5 |
| 4/14/76 | Request for admissions; motion to intervene | 2.5 | 2.0 |
| 5/14/76 | Interrogatories; correspondence; miscellaneous | 1.5 | 2.0 |
| 5/15/76 | Interrogatories; correspondence; miscellaneous | 2.0 | 4.0 |
| 6/16/76 | Notice of deposition; correspondence | .1 | .1 |
| 2/23/76 | Interviewing plaintiffs; phone calls | 1.8 | .4 |
| 6/24/76 | Trying to arrange depositions; conference | .3 | .2 |
| 8/17/76 | Interrogatories; meeting with students | 2.3 | 2.3 |
| 11/24/76 | Reviewing defendants' motion to quash and memo in opposition; withdrawal of motion to intervene | 1.0 | .2 |
| 4/7/77 | Correspondence; call to court's law clerk | .1 | .1 |
| 4/28/77 | Conference with co-counsel; correspondence | .2 | .1 |
| 5/1/78 | Reviewing answer to complaint; motion for safekeeping; correspondence from plaintiff | 1.0 | .9 |
| 5/9/78 | Motion to transfer plaintiff from prison to jail; correspondence with sheriff; brief re: *Navarette*; research | 1.0 | 2.7 |
| 5/10/78 | Brief re: *Navarette*; correspondence with plaintiff | 6.0 | .2 |
| 5/15/78 | Research and brief re: *Navarette*; correspondence with plaintiff | 8.0 | .2 |
| 5/18/78 | Review of court order; letter of plaintiff | .1 | .1 |
| 5/22/78 | Correspondence from plaintiff; memo re: *Navarette* | 2.0 | .1 |
| 8/31/78 | Correspondence from plaintiff; review of discovery | .2 | .2 |

to the defendants in this case for services rendered through August 5, 1981 for purposes of the initial fee calculation hours is 599 hours. The affidavit filed by Myrna Hart on October 7, 1985 reveals that she catalogued an additional 96 hours on this case from August 10, 1981 through October 3, 1985. After carefully reviewing all the entries on that affidavit, this court finds that 21.5 hours must be excluded outright.[3] This court further finds that another 7.6 must be excluded in apportioned time.[4] Accordingly the court finds that the number of hours properly charge-

| Date | Activity | Included | Excluded |
|---|---|---|---|
| 9/21/78 | Meeting with students; interrogatories; call from assistant attorney general | .4 | .3 |
| 9/25/78 | Conferences with students; statement of facts to be proved | .3 | .2 |
| 9/26/78 | Conference with students; calls re: witnesses | .6 | .5 |
| 9/28/78 | Statement of facts and witnesses; conference with students; call from deputy attorney | 1.0 | .2 |
| 10/4/78 | Calls to witnesses, to deputy attorney general; conferences with students | .9 | .2 |
| 10/5/78 | Calls re: witnesses, to and from deputy attorney general; notice of depositions; conference with students | 1.9 | .2 |
| 10/12/78 | Correspondence to and from plaintiffs; conference with students; call to deputy attorney general; preparation for trial; research | 4.9 | .2 |
| 10/13/78 | Call to deputy attorney general and to plaintiff; conference with students; preparation for depositions and trial | 6.0 | .2 |
| 10/20/78 | Pre-trial conference; research; deposition of plaintiff; calls re: witnesses; conferences with students | 7.4 | .2 |
| 10/25/78 | Preparation for trial; meeting with students; call to deputy attorney general | 4.5 | .2 |
| 11/7/78 | Meeting with students; findings of fact; research | 2.1 | .2 |
| 11/14/78 | Review of testimony; proposed findings of fact; meeting with students | 6.9 | .2 |
| 11/16/78 | Research for supplemental trial brief; proposed findings of fact; meeting wih students | 2.1 | .2 |
| 11/17/78 | Research for supplemental trial brief; proposed findings of fact; meeting with students | 4.7 | .2 |
| 2/8/79 | Correspondence from plaintiffs; conference call with Seventh Circuit; call to clerk; review order re: transcript; conference with student | .7 | .2 |
| 2/20/79 | Motion for free transcript; research; conference with student | 1.7 | .2 |
| 4/16/79 | Conference with student; preparation for appellate brief | .8 | .2 |
| 4/17/79 | Conference with student; preparation for appellate brief | 2.3 | .2 |
| 4/26/79 | Conference with student; correspondence from plaintiff | .1 | .5 |

**3.** The following time was excluded outright from Myrna Hart's request for fees filed October 7, 1985:

| Date | Activity | Time |
|---|---|---|
| 9/1/81 | Conference with students | .3 |
| 9/2/81 | Conference with student | .5 |
| 9/3/81 | Conference with student | .1 |
| 9/8/81 | Conference with student | .2 |
| 9/9/81 | Conference with student | .2 |
| 9/24/81 | Conference with students | .9 |
| 9/29/81 | Conference with students re: fee memo | .6 |
| 9/30/81 | Conferences with students | 1.1 |
| 1/13/83 | Interview with plaintiff (at reformatory) | 8.0* |
| 1/24/83 | Research; correspondence from and to plaintiff | .6 |
| 4/12/84 | Conference with interns | .3 |
| 4/24/84 | Conference with students re: fee memo update | .3 |
| 5/15/84 | Conference with students | .1 |
| 8/23/84 | Conference with students | .4 |
| 10/3/84 | Interview with plaintiff | 1.4* |
| 1/18/85 | Conference with students | .6 |
| 2/14/85 | Research; conference with students and call from legal consultant | 1.3 |
| 2/19/85 | Conference with students | .3 |
| 9/19/85 | Conference with student | .5 |
| 9/24/85 | Conference with student | .3 |
| 9/26/85 | Interview with plaintiff | 3.5* |

\* This court finds that the time spent by plaintiffs' counsel, being a total of 12.9 hours, interviewing plaintiff was unnecessary at this stage of this case and was therefore excluded.

**4.** The following time was apportioned as follows from Myrna Hart's request for fees filed October 7, 1985:

| Date | Activity | Included | Excluded |
|---|---|---|---|
| 8/28/81 | Conference with students; correspondence to plaintiff | .1 | .5 |
| 10/1/81 | Conferences with students re: fee memo; call from plaintiff | .1 | .4 |
| 11/13/81 | Review of *Wellman* opinion and consultation re: motion to Seventh Circuit | 1.4 | 1.5 |
| 4/14/82 | Correspondence to plaintiff; research; conference with student | .1 | 1.5 |
| 11/28/83 | Conference with students; correspondence from and to plaintiff | .2 | .4 |
| 1/30/85 | Meeting with students; review of prior objections to defendants' proposed order | .4 | .5 |
| 2/8/85 | Conference with student; review of record; research | .2 | .3 |
| 2/15/85 | Call from consultant; conference with students; review of defendants' exhibits | .4 | 1.0 |
| 2/21/85 | Response to defendants' memo; conference with students; research | 8.5 | .7 |
| 9/17/85 | Meeting with students; motion for fees | .4 | .4 |

able by Myrna Hart to the defendants in this case for services rendered from August 10, 1981 through October 7, 1985 for purposes of the initial fee calculation hours is 66.9 hours.

Based on the foregoing, the number of hours reasonable expended on this litigation by plaintiffs' attorneys is as follows:

| | | |
|---|---|---|
| Ivan E. Bodensteiner | | 3.5 hours |
| Myrna Hart | | 665.9 hours |
| Pre-August 1981 | 599.0 | |
| August 1981 to | | |
| October 1985 | 66.9 | |
| TOTAL | | 669.4 hours |

To complete the initial calculation of a reasonable fee in this case, the court must determine the reasonable hourly rate(s) chargeable by plaintiffs' counsel in this case. Reasonable hourly rates are the prevailing market rates in the relevant community regardless of whether plaintiffs are represented by private or nonprofit counsel. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Further, the fee applicant bears the burden of establishing and documenting an appropriate hourly rate. *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941.

In the initial motion for attorney fees filed by plaintiffs on August 18, 1981, Ivan E. Bodensteiner requested an award of $75.00 per hour for the time he spent rendering services to the plaintiffs in this case. Myrna Hart requested an award of $60.00 per hour. Attached to that motion were two affidavits with respect to a reasonable fee for services rendered in cases involving constitutional or civil rights. Palmer C. Singleton, Jr. stated that it was his opinion that a reasonable for such cases ranged from $35.00 per hour to $75.00 per hour depending on the experience, knowledge and ability of the attorney involved. Mr. Singleton's affidavit reveals that he is ad-

mitted to practice law in Indiana and practices in federal and state courts. It does not reveal, however, where in the State he practices. The affidavit of Donald P. Levinson, a practicing attorney in Lake County, Indiana, reveals that it was his opinion that attorneys in northwest Indiana generally charged between $35.00 per hour and $60.00 per hour for services rendered to clients although the fees charged may be higher in more complex or difficult cases or where attorney fees are contingent upon success.

On August 20, 1984, the plaintiffs filed an amended motion for attorney fees to request $95.00 per hour for Mr. Bodensteiner and $85.00 per hour for Myrna Hart. No additional hours were claimed by either attorney. Attached to the amended motion are the affidavits of six attorneys who practice in northwest Indiana. Their opinions as to the amount of attorney fees charged in that area ranges from $50.00 per hour to $125.00 per hour depending on the attorney's experience and expertise as well as the nature of the case. All the attorneys state that cases involving civil rights warrant a higher per hour charge, from $75.00 per hour to $100.00 per hour depending on the complexity, probability of recovery, extent of wrong involved and "related concerns." The plaintiffs' October 7, 1985 motion requests the same hourly rate for the attorneys as the August 1984 motion. The Second Amended Motion merely includes the additional hours spent by Myrna Hart on this litigation.

This case has a long history having been filed approximately 10½ year ago. Mr. Bodensteiner's involvement in this case all occurred prior to the time the original fee request was filed with this court. In 1981, he requested an award of $75.00 per hour. Without providing any further representation in this case, he now seeks an award at $95.00 per hour. *Blum v. Sten-*

| Date | Activity | Included | Excluded |
|---|---|---|---|
| 10/1/85 | Conference with student; call from plaintiff; computation of costs; amended motion for fees | .3 | .2 |

| Date | Activity | Included | Excluded |
|---|---|---|---|
| 10/3/85 | Amended motion for fees; conference with student; computation of hours; affidavit | .7 | .2 |

*son* indicates that a reasonable fee should be determined according to "prevailing market rates." This court has real difficulty in awarding Mr. Bodensteiner the present market rate for work he did 5 to 10 years ago particularly since he did not provide any services to plaintiffs after the initial petition. However, *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982) indicates that a prevailing party is entitled to compensation for delay in receiving their attorney fees and suggested several ways that such compensation can be achieved, including awarding fees at the present rather than the historical rate. This method appears to be a simple one and although this court has difficulty doing so, this court finds that in light of Mr. Bodensteiner's experience, a reasonable fee for his services in this case is $95.00 per hour.

■■ This court must also determine a reasonable hourly rate for Myrna Hart. This is particularly difficult because of the relative skill and experience of Ms. Hart over the 10 years of this litigation. Myrna Hart's affidavit indicates that she was admitted to the bar in Indiana in 1975, the same year she began representing plaintiffs in this case. Although her affidavit states she had handled at least 40 civil rights cases at the time she made the affidavit in 1981, her skill and experience, at least in the early years of this litigation, cannot be characterized as extensive by any means. This court will take this factor into consideration in determining a reasonable hourly rate as permitted in *Hensley*. The market rates in 1981 ranged from $35.00 to $75.00 per hour and in 1985 the market rates ranged from $50.00 to $125.00 per hour. In 1981, this court would have awarded Ms. Hart $40.00 per hour based on her skill and experience and under the prevailing market rates this court would award her $75.00 per hour. This court finds that it would be reasonable to split the difference and award her that amount for all the hours spent by her in this litigation. This approach favors her since she had substantially more hours before 1981. Accordingly, this court finds that a reason-

able fee for Myrna Hart's services in this litigation is $50.00 per hour.

■■■ The initial calculation of reasonable attorneys fees in this case is as follows:

| Attorney | Charge/hour | Hours | Total Charges |
|---|---|---|---|
| Ivan E. Bodensteiner | $95.00 | 3.5 | $ 322.50 |
| Myrna Hart | $50.00 | 665.9 | $33,295.00 |
| | | | $33,617.50 |

However, the determination of a reasonable fee does not end with the calculation of hours times rates. The court may also consider other factors that may lead the court to adjust the fee upward or downward including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3; *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). These factors may be considered either in determining the initial calculation (hours and rates) or in determining whether the fee award should be adjusted. *Lynch, supra* at 426. One of these factors, "results obtained" is an important and crucial factor and must be carefully considered, particularly when a case presents multiple claims. If a case involves unrelated claims and a plaintiff prevails on some but not all claims, a court may not award a fee for the time spent on the unsuccessful claims. However, if the plaintiffs' claims involve a common core of facts or are based on related legal theories, the court should focus on the overall relief obtained by the plaintiff in relation to the hours reasonably expend-

ed on the litigation rather than focusing on the discrete claims raised by the plaintiff. *Hensley, supra* 461 U.S. at 435, 103 S.Ct. at 1940. Further, if a plaintiff achieves excellent results, his attorney should receive a full compensatory fee. However, if a plaintiff only achieves partial or limited success, even if his claims are interrelated, the product of hours times rates may be excessive. In any event, the critical focus of the court must be on the success and results of the plaintiff. *Id.* at 435–36, 103 S.Ct. at 1940–41. In making a determination with respect to adjusting a fee award in relation to the results obtained, the court must exercise its discretion. Although the Supreme Court in *Hensley* stated that there was no precise rule of formula to be applied in making such a determination, the Court noted that a district court may identify specific hours that should be eliminated or may simply reduce the award to account for the limited success. *Id.*

In this case, the second amended complaint contained extensive allegations of facts and five claims for relief. The first claim alleges a violation of the First Amendment for retaliation for exercising rights of speech and petition and by confiscating, destroying or interfering with plaintiffs' correspondence, legal documents and writing. The second claim alleges a violation of the Sixth Amendment for impeding access of plaintiffs to counsel and the courts by denying plaintiffs use of the prison writ department and personnel and of legal books and materials, by interfering with their correspondence to the court, by preventing notarization of their legal documents and by denying them access to counsel without prior specific authorization by the committing county officials. Plaintiffs' third claim is for violation of the Eighth Amendment for the alleged infliction of cruel and unusual punishment on plaintiffs. The plaintiffs described twelve (12) activities allegedly engaged in by defendants that constituted cruel and unusual punishment including: (1) denying plaintiffs phone calls to and correspondence and visitation with family, friends and attorneys, without specific authorization from committing county officials; (2) denying plaintiffs adequate medical care rendered under sanitary conditions; (3) denying plaintiffs adequate clothing; (4) holding plaintiffs in seclusion or detention under conditions similar to or worse than those used to hold convicted men found guilty of infractions of prison rules; (5) denying plaintiffs access to legal books and materials and assistance from writ department personnel; (6) denying plaintiffs adequate opportunity for recreation and exercise; (7) denying plaintiffs adequate sanitary needs, opportunity to shower and sufficient warmth during the colder months; (8) macing plaintiffs or spraying them with similar chemical substances without cause or justification; (9) confiscating, interfering with and/or destroying plaintiffs' property, legal documents, correspondence and writings; (10) punishing plaintiffs for exercising their rights of speech and petition; (11) punishing plaintiffs without affording them proper procedural safeguards; and (12) failing to provide plaintiffs with proper written notice of the prison's rules and regulations and of punishments and procedures for infractions thereof. The plaintiffs' fourth claim was for violation of the Equal Protection Clause of the Fourteenth Amendment by not affording plaintiffs the care, conditions and treatment they provide to convicted men at the prison or that they prescribed for non-convicted men at county or city jails. The plaintiffs' last claim is for violation of the Due Process Clause of the Fourteenth Amendment. In support of this claim, the plaintiffs alleged that defendants deprived them of liberty and property without due process by failing to provide the plaintiffs with the rules and regulations for the prison at the time they entered the prison, "punishing safekeepers and depriving them of liberty and property without proper procedural safeguards", and imposing upon safekeepers the inadequate and illegal care, conditions and treatment outlined in the Third Claim set forth above without their having been convicted of the offenses charged against them. After trial in this case, this court entered

extensive findings of fact and conclusions of law and memorandum in support thereof finding in favor of defendants and against the plaintiffs on all issues. *Lock v. Jenkins*, 464 F.Supp. 541 (N.D.Ind.1978).

The plaintiffs appealed the decision and urged reversal of the district court on six (6) grounds:

(1) The conditions of confinement taken as a whole rather than considered separately constitute violations of the safekeepers' rights to due process and equal protection; (2) Punitive seclusion was imposed upon several safekeepers without observance of procedural due process; (3) Restrictions upon visits by family members with safekeepers violated First Amendment associational rights; (4) Prison practices restricted safekeepers' access to attorneys, in violation of the First and Sixth Amendments; (5) on several occasions, correctional officers engaged in unprovoked attacks on safekeepers by the use of tear gas; and (6) Defendants' actions were taken in bad faith and therefore defendants are not immune from damages.

*Lock v. Jenkins*, 641 F.2d 488, 490 (7th Cir.1981) (footnotes omitted). The plaintiffs did not challenge any of the district court's findings of fact as clearly erroneous. The Seventh Circuit Court of Appeals affirmed in part and reversed in part.

The Seventh Circuit found that it was appropriate to consider all the conditions of confinement together to determine whether they amounted to punishment in violation of the Due Process Clause under *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The conditions complained of by plaintiffs related to: (1) the size of cells; (2) amount of recreation time outside of cells; (3) mail procedure; (4) visitations; (5) access to telephones; (6) showers; (7) access to courts; (8) access to medical services; (9) use of tear gas; and (10) loss of property. In its discussion of conditions of confinement, the Seventh Circuit focused on the size of the cells and the amount of time the pretrial detainees were permitted outside the cell. The Seventh

Circuit found that these conditions amounted to punishment in violation of the due process clause and suggested that a minimum requirement as to cell area should be imposed and the minimum should be determined flexibly in relation to the amount of time individuals are kept in the cell. *Lock v. Jenkins*, 641 F.2d at 494. The court of appeals further noted that absent individual circumstances indicating a need for more restrictive confinement, pretrial detainees should be allowed to spend significant periods each day out of their cells and some activities or programs should be regularly available to them in their time out of cell. The court of appeals did not discuss any of the other conditions complained of by plaintiffs.

The Seventh Circuit then discussed the use of tear gas by defendants. That court found that the evidence disclosed six instances of tear gas use. After discussing the relevant law, the court found two of the incidents violated the rights of the pretrial detainees but that the remaining four incidents did not.

The last violation found by the Seventh Circuit related to equal protection. The court noted that the comparison for equal protection purposes must be made between the prison population in general and the conditions in the A & O Unit where the pretrial detainees were kept. Because the conditions in the A & O Unit were more restrictive and the defendants had not placed the plaintiffs in that unit based on circumstances relating to the individual, their equal protection rights had been violated.

Finally, the Seventh Circuit found that the district court's determination of no constitutional violations with respect to discipline, visitation rights, access to lawbooks and counsel, mail, telephone policies, access to showers, access to medical services and loss of safekeepers' property was correct and that the district court's determination with respect to the defendants' liability for damages was correct. Accordingly, the court stated as follows:

This court has found that the conditions of incarceration of safekeepers violate their rights to due process insofar as all safekeepers are arbitrarily placed in cramped cells for long periods of time each day without regard for the individual situation of each safekeeper. We have also found unconstitutional the use of chemical agents to stop unpleasant but not threatening behavior by safekeepers locked in their cells. Further, this court has found a violation of the right to equal protection of safekeepers *vis a vis* other prisoners in the Indiana State Prison. In this opinion, we have indicated that these practices may not, consistent with constitutional mandates, be continued in the future. The district court is directed to frame an injunction consistent with this opinion. In all other regards, the decision of the district court is affirmed.

*Id.* at 500.

Reviewing the relief granted in this case in light of the relief sought by plaintiffs in their second amended complaint reveals that although the plaintiffs prevailed on some issues and/or claims, they certainly did not prevail on all of them. The plaintiffs did not prevail on their first claim for violation of the First Amendment. The plaintiffs did not prevail on their second claim for violation of the Sixth Amendment. The plaintiffs apparently waived their third claim for violation of the Eighth Amendment prior to trial. *Id.* at 490 n. 3. The plaintiffs prevailed on their fourth claim for violation of the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs prevailed only in part on their fifth claim for violation of the Due Process Clause of the Fourteenth Amendment. Their due process claim was primarily based on the twelve items described in the plaintiffs' third claim and the court only found due process violations on two of the twelve items: (1) denying plaintiff adequate opportunity for recreation and exercise; and (2) macing plaintiffs or spraying them with similar chemical substances without cause or justification. Further, with respect to the mace issue, the court only found two of the six incidents unconstitutional.

 In light of the plaintiffs very limited success in comparison to the scope of the litigation as a whole, the amount of the fee award must be adjusted downward. The difficulty lies with determining the proper amount of the adjustment. The plaintiffs' counsel has not provided this court with documentation with respect to the time spent on the various issues in this case so the court cannot merely eliminate those hours. Accordingly, this court will use the other approach suggested by the *Hensley* Court, simply reducing the award to account for the limited success. This court finds that the initial calculation of the attorney fees in this case should be reduced by fifty percent (50%) to account for the limited success and, therefore, the court awards reasonable attorney fees in this case as follows:

$33,617.50 \times .50 = $16,808.75.

**SO ORDERED.**